

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-20-2005

# Ie v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3159

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Ie v. Atty Gen USA" (2005). *2005 Decisions.* Paper 521.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/521

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-3159

TOMO IE;
NARWATI ALI;
PRYSCILLE MARCHIA IE;
TIMOTHY ANDREW IE,

Petitioners

v.

ALBERTO GONZALES, ATTORNEY GENERAL
OF THE UNITED STATES[*]

Respondent

_____

On Petition for Review of a Final Order of the
Board of Immigration Appeals
File Nos.: A79 309 098;
A79 309 099;
A79 309 100; and
A79 309 101.

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 15, 2005

Before: SLOVITER, BARRY, and SMITH, *Circuit Judges*

(Filed: September 20, 2005 )

_____

[*]Alberto Gonzales, Attorney General of the United States, was substituted as
Respondent pursuant to Fed. R. App. P. 43(c).

---

OPINION OF THE COURT

---

SMITH, *Circuit Judge*.

Ie Tomo, his wife Narwati Ali, and their children Priscilla Ie and Timothy Ie are natives and citizens of the Republic of Indonesia.[1] In 2001, they applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") claiming persecution on the basis of their Chinese heritage and their Christian faith. An Immigration Judge ("IJ") denied their applications and the Board of Immigration Appeals ("BIA") affirmed without opinion. A timely petition for review followed.[2] For the reasons set forth below, we will affirm the decision of the BIA and will deny the petition for review.

Ie was thirty-six years old when he filed his application for asylum. Ie claimed that he and his family were persecuted on account of both their Chinese ethnicity and their Christian faith by indigenous Indonesian Muslims. He explained in his application that he worked from 1986 to 1994 for a Chinese shopkeeper and was regularly subjected

---

[1] We recognize that the caption in this matter spells Narwati's name "Norwati" and that the IJ spelled her name "Nawati." We use "Narwati" because it is the spelling used by petitioners in their brief, by Ie in his application for asylum and his supplemental affidavit, and by the Republic of Indonesia, which issued her passport.

[2] The IJ had jurisdiction over the asylum applications pursuant to 8 C.F.R. § 208.2. The BIA possessed jurisdiction under 8 C.F.R. § 3.1(b). We exercise appellate jurisdiction over this petition for review under § 242(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(b).

to demands by Muslims for money, some of which he paid from his own pocket. To escape this extortion, in the late summer of 1994, Ie obtained new employment as a photographer with the Malibu 62 Photography Studio.

Ie's employment with Malibu 62 ended four years later, on May 13, 1998, when rioting resulted in the building's destruction in a fire. Although Ie left work early that day and was not present when the fire began, he was attacked by eight Muslim men on his way home. According to Ie, his photography equipment was taken and he was beaten and kicked because of his Chinese ethnicity. He sustained extensive bruising to his head, face and back, as well as bleeding from his face. Narwati treated Ie at home, as they were afraid to seek treatment at a hospital.

Ie also testified that during 1998 when he and his wife waited outside their daughter's Catholic school to transport her home, they were routinely subjected to demands for money by native Indonesian Muslim students from a nearby public school. According to Ie, these students used ethnic slurs, calling him a "Chinese bastard," and dented and scratched his vehicle. In November 1998, this school was also destroyed by a fire. As a result, Ie and Narwati enrolled their daughter in another Catholic school.

After the Malibu 62 Studio closed because of the fire, Ie became a freelance photographer. On the night of October 16, 1999, while driving home after photographing a wedding party, Ie's vehicle was stopped by a crowd of Muslims. Despite the late hour, Ie explained that the crowd recognized that he was not only Chinese, but also Christian,

3

pulled him out of the van, assaulted him, emptied his wallet of the 60,000 rupiahs it contained, and took his photography equipment.

Ie testified about a third incident, which occurred on May 13, 2000, when Ie was driving a motorcycle on his way to develop film. Narwati contacted him by telephone, informed him that there was rioting at a specific location, and directed that he pick up their daughter from school. He was stopped by a group of four Muslims near his daughter's school. The men called him a "Chinese pig" and demanded that he dismount the motorcycle. When Ie complied, the men kicked him, causing him to fall to the ground, and taking his motorcycle. Ie was rescued by another Chinese Indonesian, who drove him to pick up his daughter from school.

Five days after this last incident, Ie left Indonesia, and entered the United States on May 19, 2000. His family followed in September 2000. Ie filed an application for asylum, withholding of removal and relief under the CAT in March 17, 2001. The application described the above incidents, except for the assault on May 13, 2000. In addition, the application related two incidents, one in August 1984 and the other in March 1990, when Narwati was physically assaulted by Muslims who presumed that she was sexually promiscuous because of her Chinese ethnicity. Narwati also testified that on two occasions she was robbed and that the robbers called her a "Chink" and other ethnic slurs. Narwati admitted that she was a Buddhist in Indonesia, but claimed that she had been baptized as a Christian after living in the United States.

4

After a hearing, the IJ denied the applications of Ie and his family for asylum, withholding of removal and relief under the CAT. The IJ focused her attention on Ie's claim of ethnic persecution, concluding that Ie had not testified to "any examples of persecution based on religion . . . ." After recounting the testimony of Ie and Narwati, the IJ found that the conduct Ie complained of constituted robbery, burglary and extortion, and were simply criminal acts. She concluded that Ie and Narwati were "merely the victims of crime" and that they were not persecuted by the government on account of their ethnicity. In addition, the IJ noted a number of inconsistencies between Ie's testimony and his application, particularly the omission from his application of the May 2000 assault and robbery which occurred immediately before he left for the United States. The IJ concluded that Ie and Narwati had failed to establish that they suffered past persecution on account of a protected ground and that they were ineligible for withholding of removal. Relief under the CAT was denied inasmuch as Ie failed to establish that he and his family would be tortured if repatriated.[3] The BIA affirmed without opinion.[4] This timely petition for review followed.

---

[3]Petitioners' brief fails to address the merits of their claim for relief under the CAT. Accordingly, the issue is waived and we need not address it further. *Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court."); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).

[4]Although Ie filed a motion for reconsideration, Ie did not file a petition for review of the BIA's denial of that motion. For that reason, we limit our discussion to the IJ's merits adjudication of these claims for asylum.

Section 242 of the INA provides that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). In *Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003) (en banc), we observed that this standard "require[s] that the agency support its findings with substantial evidence. . . ." Substantial evidence is present if a "reasonable fact finder could make a particular finding on the administrative record . . . ." *Id.* at 249. "When the BIA issues an [affirmance without opinion] under the streamlining regulation, we review the IJ's opinion and scrutinize its reasoning." *Id.* at 245

Here, Ie and Narwati contend that the IJ's decision is not supported by substantial evidence because the IJ failed to consider the country conditions, the anti-Chinese climate in the country, and the anti-Chinese animus evident in the remarks and statements of Ie's and Narwati's attackers. Ie and Narwati submit that this evidence was sufficient to establish persecution under our mixed-motive case law. In addition, Ie asserts that the IJ erred in finding Ie's testimony not fully credible.[5]

In *Dia*, we reiterated that the substantial evidence standard also applies to adverse credibility determinations. *Id.; Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). "[S]pecific[,] cogent reasons" should be given for finding a witness not credible, *Gao*,

---

[5]Ie also submits that he and his family were deprived of their due process right to a full and fair hearing because the translator was incompetent. This issue was neither raised in Ie's initial appeal to the BIA nor in the motion for reconsideration. Because Ie failed to raise the issue before the BIA, we lack jurisdiction to consider it. *Abdulrahman v. Ashcroft,* 330 F.3d 587, 595 (3d Cir. 2003); *Alleyne v. Immigration and Naturalization Service*, 879 F.2d 1177, 1182 (3d Cir. 1989).

299 F.3d at 276, and those "reasons must bear a legitimate nexus to the finding." *Balasubramanrim v. INS*, 143 F.3d 157, 162 (3d Cir. 1998). While inconsistencies may warrant an adverse credibility determination, the inconsistency should "involve the 'heart of the asylum claim.'" *Gao*, 299 F.3d at 272 (quoting *Ceballos-Castillo v. INS*, 904 F.2d 519, 520 (9th Cir. 1990)).

We find no error by the IJ in discounting Ie's testimony that he was persecuted on the basis of both his ethnicity and his faith. As the IJ explained, Ie's religious persecution claim was not supported by the evidence. Indeed, even in the brief submitted to this Court, there is no real argument that he was persecuted on the basis of his faith. As a result, the heart of Ie's claim for asylum was his assertion that he and his family had been persecuted on the basis of their Chinese ethnicity. In support of this contention, Ie testified that he was abused on numerous occasions because of his Chinese ethnicity. The nature of the mistreatment escalated over time, and he was assaulted in May 1998, October 1999, and finally in May 2000 just before his departure from Indonesia when he was knocked to the ground and injured sufficiently that another Chinese Indonesian came to his aid. Yet, Ie's lengthy March 2001 application for asylum omitted the May 2000 assault. This omission, as the IJ noted, is at the heart of Ie's claim of ethnic persecution. This substantial variance between Ie's application and his testimony is a legitimate basis for discrediting Ie's testimony. We find no error by the IJ in according this variance more weight than Ie's explanation, which blamed the omission on the person who assisted him

7

in completing his application. This variance, together with other inconsistencies noted by the IJ, constitute substantial evidence for the IJ's adverse credibility finding.

Ie also contends that the IJ misapplied our mixed-motive case law and that there was ample evidence to demonstrate that his mistreatment was based in part on his Chinese ethnicity. In *INS v. Elias-Zacarias*, 502 U.S. 478 (1992), the Supreme Court instructed that the INA "makes motive critical" and that an alien "must provide *some* evidence of it, direct or circumstantial." *Id.* at 483 (emphasis in original). Consistent with *Elias-Zacarias*, we recognized in *Chang v. INS*, 119 F.3d 1055 (3d Cir. 1997), that an alien may establish persecution if he demonstrates that his persecutors were "motivated, at least in part," on account of a protected ground. *Id.* at 1065; *see also Lie v. Ashcroft*, 396 F.3d 530, 535 (3d Cir. 2005) (citing *Lukwago v. Ashcroft*, 329 F.3d 157, 170 (3d Cir. 2003)). According to Ie, the anti-Chinese remarks of his attackers show that he was targeted because of his ethnicity and he submits that there is additional support for his contention in the Country Conditions Report which confirms that there is tension between native Indonesians and Chinese Indonesians.

We agree with Ie and Narwati that the evidence they cite could support a finding that their attackers were motivated in part by Ie's and Narwati's Chinese ethnicity. But the question before us is not whether the record merely supports Ie's and Narwati's claim of persecution. Rather, we must consider whether there is substantial evidence on the record as a whole to support the IJ's determination that Ie and his family were not

persecuted. *Dia*, 353 F.3d at 248 (quoting *Elias-Zacarias*, 502 U.S. at 481). This requires consideration of countervailing evidence that Ie's attackers were motivated by his ethnicity and determining whether reversal is warranted because the "evidence not only *supports* that conclusion, but *compels* it. . . ." *Elias-Zacarias*, 502 U.S. at 481 n.1 (emphasis in original).

We employed this analysis in *Lie*, 396 F.3d at 530, which was a mixed motive case. There, we considered a similar argument by Chinese Indonesians seeking asylum. Lie claimed that she and her husband were persecuted for their Chinese ethnicity when unknown individuals broke into their home, robbed them and called her a "Chinese pig." The IJ credited Lie's testimony, and concluded that they had been robbed in part because of their ethnicity. The BIA reversed on several grounds. Pertinent to our discussion here, the BIA determined that Lie's attackers were motivated by money and that the use of ethnic slurs during the robbery was insufficient to establish that her attackers were motivated by her ethnicity. We denied her petition for review, concluding that the "BIA cited significant evidence supporting the conclusion that the attackers were motivated by money. . . ." *Id.* at 535. Although there was evidence from the Country Conditions Report of widespread animus against ethnic Chinese, we reasoned that the

> BIA was nevertheless entitled to rely on the evidence that . . . the robberies were motivated by money. We find that the evidence of general ethnic difficulties would not compel a reasonable factfinder to conclude that the intrusions were "on account of" Lie's ethnicity. . . .

*Id.*

As in *Lie,* the IJ in this case cited significant evidence to support her conclusion that Ie and Narwati were simply victims of crime. As the IJ explained, Ie appeared to have some wealth and he was robbed of expensive camera equipment (on two occasions), 60,000 rupiahs, and his motorcycle. Once Ie turned this property over to his attackers, they fled and Ie was able to seek treatment for his injuries. Narwati's testimony confirms that she was also robbed and harassed sexually.

Although there is some countervailing evidence similar to that in *Lie*, we find it significant that Ie's testimony was not fully credited. Accordingly, consistent with *Lie*, we conclude that Ie's partially credited testimony and the evidence of discord between native Indonesians and Chinese Indonesians are not so compelling that a reversal is warranted. *Elias-Zacarias*, 502 U.S. at 481 n.1; *Lie*, 396 F.3d at 535.

Because there is substantial evidence to support the IJ's determination that Ie and his family were not persecuted on the basis of their ethnicity or their religion, we will deny the Ie family's petition for review.