**Everth Aroldo CEBALLOS–CASTILLO, and Santos Pineda–Medrano, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 88–7529.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1990.

Decided June 1, 1990.

Kevin R. Johnson, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for petitioners.

Mark C. Walters, Assistant Director, Office of Immigration Litigation, Dept. of Justice, Washington, D.C., for respondent.

Before SNEED, FARRIS and FERNANDEZ, Circuit Judges.

FARRIS, Circuit Judge:

Everth Ceballos–Castillo and his wife Santos Pineda–Medrano, natives and citizens of Guatemala, appeal the decision of the Board of Immigration Appeals denying their application for asylum and withholding of deportation. The BIA upheld the decision of the Immigration Judge, who found that the aliens' claims were not credible because of inconsistencies in their testimony and material misstatements of fact on their asylum applications. The aliens claim that these inconsistencies are minor and cannot support the BIA's determination.

The Immigration Judge and the Board identified four reasons for finding that the aliens' testimony was incredible: (1) the gross inconsistencies between the asylum application and the testimony and declaration of May 4, 1984, especially concerning the "180 degree" change from a claim of guerrilla persecution to one of government persecution; (2) the inconsistencies regarding the aliens' passports; (3) Mr. Castillo's position in the civil patrol at the time he claimed to have been persecuted by the government; (4) the fact that the aliens left their two year old child behind while they fled persecution. A review of the entire administrative record shows that the Immigration Judge's and the Board's findings of incredibility are supported by the evidence.

### A. The Change From Guerrilla to Government Persecution

The aliens attempt to justify their total refutation of their earlier claim of guerrilla persecution, and the change to a claim of government persecution in their 1984 hearing, by claiming that they lied because of their fear of the government. They assert that this reversal is itself consistent with their claim of asylum. They argue that "[u]ntrue statements by themselves are not reason for refusal of refugee status and it is the examiner's responsibility to evaluate such statements in the light of all the circumstances of the case." *Turcios v. INS*, 821 F.2d 1396, 1400 (9th Cir.1987) (Salvadoran alien claimed he was Mexican in order to avoid deportation to El Salvador).

We understand but reject the argument. Unlike *Turcios*, the mistatements here were not incidental. They involved the heart of the asylum claim. Their sworn testimony was inconsistent with their sworn asylum application on many points, ranging from the general claim of persecution to the details of that claim.

### B. Inconsistencies Relating to the Passport

The IJ and the BIA also relied on the inconsistencies between the aliens testimony regarding their passports and the normal appearance of the documents. The aliens claimed that a friend in the army obtained the passports illegally, and gave the documents to them just before they left Guatemala. Yet, the passports were not issued on the same day, they have a gap of more than 300 numbers between them, and they were not issued by the same official. The dates of issuance, May 9 and 10, 1983, are during the time that Mr. Castillo was allegedly in detention. The passports also bear fingerprints that refute a claim that someone else obtained the documents for them.

### C. Mr. Castillo's Service in the Civil Patrol

The BIA and the IJ also considered the fact that Mr. Castillo served in the civil

patrol, a volunteer para-military organization under the supervision of the army, at the time he claims to have been subject to a capture order.[1] Mr. Castillo testified that he had been under a capture order since 1980. Yet, he volunteered for the civil patrol in January 1981 and served for over two years, bringing himself to the attention of those parties he claims to have been hiding from.

### D. *The Aliens' Leaving Their Child in Guatemala*

We recognize that "[t]he fact that [the alien's] family is safe does not refute [his] claims [of persecution]." *McMullen v. INS*, 658 F.2d 1312, 1319 (9th Cir.1981). It may well have been safer to leave the child at home than bring it along on the long and potentially dangerous trip to the United States. This factor was not supported by substantial evidence.

Even though our review satisfies us that one of four reasons cited by the BIA is not supported by the record, the finding of the BIA that the aliens' testimony was incredible finds substantial support in the record.

AFFIRMED.

---

1. The BIA did not, as the aliens claim, make any per se rule that membership in the civil patrol bars a claim of persecution by the government.

The BIA decided only that based on these facts Mr. Castillo's service in the civil patrol was inconsistent with his claim of persecution.