

Villanova University School of Law

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-4-2005

# Diallo v. Dept Homeland

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4750

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Diallo v. Dept Homeland" (2005). *2005 Decisions.* Paper 1585.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1585

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 03-4750

SOULEYMANE DIALLO,

Petitioner

v.

DEPARTMENT OF HOMELAND SECURITY, Sec. Tom Ridge;
BUREAU OF IMMIGRATION & CUSTOMS ENFORCEMENT; THEODORE
NORDMARK, Act. Dist. Dir.,

Respondent

Petition for Review of the Decision of
the Board of Immigration Appeals
U.S. Department of Justice
Executive Office for Immigration Review
File: A77-550-820
Judge: Frederick D. Hess for the Board

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 18, 2004

(Filed: January 4, 2005)

Before: SCIRICA <u>Chief Judge</u>, MCKEE,
and CHERTOFF, <u>Circuit Judges</u>

OPINION

McKEE, <u>Circuit Judge</u>.

Souleymane Diallo[1] petitions for review of the decision of the Board of

_____

[1]The majority of documents in the record state that petitioner's name is "Souleymane
Diallo." However, petitioner avers his name to be "Diallo Souleymane." We will refer to

1

Immigration Appeals, affirming without opinion the decision of the Immigration Judge denying Diallo's application for asylum, withholding of removal, and protection under the Convention Against Torture. We conclude that the BIA's decision is supported by substantial evidence, and we will therefore affirm.

**I.**

Since we write only for the parties, it is not necessary to recite the facts of this case in detail except insofar as may be helpful to our brief discussion. Diallo entered the United States with a Guinean passport on April 18, 1995, with permission to remain until October 17, 1995.[2] (A.R. at 128, 130, 737). Diallo filed an application for asylum with the former INS in July 1999. (A.R. 660-670). The former INS commenced removal proceedings against petitioner on August 30, 1999. (A.R. at 737). At the removal hearing, Diallo stated that he is a native of Liberia, not Guinea. (A.R. 111). He also claimed that his mother was born in Liberia and that his father was born in Guinea.[3] (A.R. 125).

_____

Petitioner as "Souleymane Diallo," to conform with the caption on his brief.

[2] Diallo used this passport to enter the United States in 1995, but he testified he could not provide it for inspection by the IJ because he "returned the passport to its owner." (A.R. 131).

[3]The IJ noted that Diallo's first I-589 application reflected the opposite: that Diallo's father was born in Liberia and his mother in Guinea. (A.R. 70). The IJ also noted that a naturalization booklet previously belonging to Diallo's father, reflected that Diallo's father was a citizen of Mali who later became a naturalized citizen of Liberia. (A.R. 79).

Diallo testified that the National Patriotic Front of Liberia ("NPFL"), under the leadership of Liberia's President Charles Taylor, persecuted Diallo in Liberia because of his father's political activities in support of Samuel Doe, Liberia's former President. (A.R. 138-39). Diallo asserts that his father led his tribe's political campaign for Doe in the 1980s, and that Diallo himself participated in a youth group affiliated with the Doe campaign. (A.R. 139-40).

Diallo testified that in December 1991, several members of the NPFL beat him, struck his mother in the face with the butt of a gun, stole money and goods from the family store, and then pursued Diallo's father, who had fled to the Lebanese Embassy. (A.R. 142-44).[4]

---

[4]The Department of Homeland Security argues that Diallo's failure to corroborate the beating with documentation further undermines his claim. Appellee states: "petitioner alleged . . . he was tied up and beaten, his mother was hit in the face and robbed, and his father was killed by NFLP members on account of th family's support of Samuel Doe." Appellee then states: "[p]etitioner failed to provide any documentary evidence or affidavits to support these assertions." Appellee's Br. at 21.

However, to the extent that the Department of Homeland Security is suggesting that the absence of documentary evidence undermines Diallo's credibility, we note that the absence of such evidence, without more, would not support an adverse credibility determination. Diallo can not be expected to obtain "documentary evidence or affidavits" to corroborate that his mother and he were beaten by street thugs because it is not realistic to assume that documentary evidence of such beatings exists. Witnesses would certainly not be likely to endanger themselves by giving a "statement" even if there were any witnesses, and even if police were somehow willing to try to obtain statements that might jeopardize supporters of the regime that employs them. Furthermore, there is nothing to suggest that anything like "medical records" would have been either generated or accessible. We think it obvious that medical facilities as we know them are not often found in the underdeveloped world, nor is it likely that facilities that do exist would issue documentation of beatings by street thugs loyal to an oppressive and brutal regime.

3

The IJ held that Diallo was barred from applying for asylum because he did not file within a year of his arrival in the United States. (A.R. 68-69).[5] The IJ also ruled that Diallo was not credible. (A.R. 80). That adverse credibility finding was based on several factors including inconsistencies in Diallo's testimony, Diallo's failure to produce any documentation of his father's murder, and Diallo's submission of fraudulent documents to establish his identity. (A.R. 80-81). Based on Diallo's lack of credibility, the IJ denied relief and ruled that Diallo was not eligible for voluntary departure. *Id.* The BIA issued a per curiam order affirming the IJ's decision without opinion pursuant to 8 C.F.R. § 1003.1(e)(4), and this appeal followed.

## II.

Where, as here, the BIA affirms the IJ's decision without opinion, the opinion of the IJ constitutes the final agency determination for purposes of our review. 8 C.F.R. §

We have previously explained that asylum seekers will rarely be able to produce documentary evidence of the brutality they allege. "It is obvious that one who escapes persecution in his or her own land will rarely be in a position to bring documentary evidence or other kinds of corroboration to support a subsequent claim for asylum." *Senathirajah v. INS.*, 157 F.3d 210 215 (3d. Cir. 1998). However, as we explain below, we nevertheless agree that substantial evidence supports the adverse credibility determination that is fatal to Diallo's claim for relief here.

[5] Diallo explains that he did not file for asylum until 1999 because he was waiting for the results of the 1997 Liberian presidential election. (A.R. 154). Diallo does not address whether his delayed filing deprives us of jurisdiction pursuant to 8 U.S. C. § 1158(a)(2)(B). Since Diallo does not attempt to establish the "special circumstances" necessary to pursue his asylum claim given the untimely filing, we agree that the asylum claim is clearly barred by Diallo's untimely filing. That late filing des not, however, preclude our review of his claim for withholding of removal or for relief under the Convention Against Torture. *See, Tarrawally v. Ashcroft*, 338 F.3d 180 (3d. Cir. 2003).

4

1003.1(e)(4); *Dia v. Ashcroft*, 353 F.3d 228, 242 (3d Cir. 2003) (en banc). We affirm the IJ's findings if they are supported by substantial evidence. *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939). Under this deferential standard of review, we uphold the credibility determination unless any "reasonable adjudicator would be compelled to conclude the contrary." 8 U.S.C. § 1252(b)(4)(B).

The IJ's conclusion that Diallo was not credible was based primarily on Diallo's submission of fraudulent documents to establish his identity, *i.e.* the counterfeit Liberian national I.D. card and Liberian birth certificate. Diallo's testimony was also undermined by numerous inconsistencies in his testimony. We conclude, after reviewing the record as a whole, that the IJ's credibility determination was based on substantial evidence.

Diallo's principal argument on appeal is that the IJ mistakenly relied on *Matter of O-D*, 21 I. & N. Dec. 1079 (BIA 1998), which Diallo asserts is distinguishable. There, the BIA held that where the fraudulent document is used to support a claim for asylum (as opposed to gaining entry into the United States), the "submission into evidence of . . . [a] counterfeit document generally discredits [the applicant's] testimony regarding asylum eligibility and specifically discredits his claim of identity." *Id.* at 1082. Thus, the BIA found that the applicant's presentation of "at least one counterfeit document . . . submitted to prove a central element of the claim in an asylum adjudication, indicates his lack of

5

credibility." *Id*. at 1083. The BIA thus concluded that presentation of such counterfeited documents, "in the absence of an explanation regarding such presentation, creates serious doubts regarding the respondent's overall credibility." *Id.* at 1083.

However, Diallo argues that his case is "readily distinguishable" from *Matter of O-D* because he explained the counterfeit documents. Diallo explained that his cousin had obtained these documents in Liberia at Diallo's request, and that Diallo did not know that the documents were counterfeit until after both the former INS' forensic laboratory and Diallo's own expert determined they were.

However, that explanation does not alter the fact that Diallo bore the burden of proving his claim with credible evidence, *see Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (citation omitted) and his failure to establish his claim resulted in the IJ concluding that Diallo was not entitled to relief. Moreover, the fraudulent documents were not the only basis for the IJ's negative credibility determination.

Diallo argues that his testimony was consistent on many key issues and that the inconsistencies cited by the IJ were not critical to Diallo's claim for relief. We agree that an adverse credibility determination must be based upon material inconsistencies. *See Ceballos-Castillo v. INS*, 904 F.2d 519, 520 (9th Cir. 1990). We also agree that several of the inconsistencies the IJ cited are not material to his claim for relief. For example, Diallo's first I-589 application states that his father's shop was "destroyed." (A.R. 73). However, in his testimony at the first hearing before the IJ, Diallo stated that the store

6

was "emptied" rather than "destroyed." *Id.* The IJ concluded that this discrepancy undermined Diallo's credibility. However, this is a minor "inconsistency" that could easily have resulted from nothing more than semantics, or difficulties in communication.

Nevertheless, Diallo's testimony also included material inconsistencies regarding his parents' citizenship, his own birth date, and the time frame and circumstances pertaining to fraudulent documents purportedly received from his cousin. These inconsistencies can not be dismissed as immaterial or irrelevant. They bear directly on Diallo's claim as they are central to his assertion that he is a citizen of Liberia and his explanation for seeking refuge from persecution in that country. Therefore, even though the IJ highlighted some irrelevant inconsistencies, substantial evidence remains on this record to support the adverse credibility determination that is fatal to his claim for relief.