

Opinions of the United
States Court of Appeals
for the Third Circuit

2-8-2006

# Gjocaj v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4521

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Gjocaj v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1621.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1621

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-4521

———

BLERIM GJOCAJ,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA No. A96-249-412)

———

Argued January 17, 2006

Before: ROTH, FUENTES, and BECKER, Circuit Judges.

(Filed:  February 8, 2006)

Meer M.M. Rahman,
Robert J. Pures, II (Argued)
Christophe & Associates, P.C.
2 Wall Street, Eighth Floor
New York, NY 10005

   Attorneys for Petitioner

Patrick L. Meehan
  United States Attorney
Laurie Magid
  Deputy U.S. Attorney for Policy and Appeals
Virginia A. Gibson
  Assistant U.S. Attorney, Chief, Civil Division
Mary Catherine Frye (Argued)
  Assistant U.S. Attorney
Eastern District of Pennsylvania
615 Chestnut Street
Philadelphia, PA 19106

       Attorneys for Respondent

---

## OPINION OF THE COURT

---

FUENTES, Circuit Judge.

Blerim Gjocaj petitions for review of a decision by the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Because we find that there is substantial evidence to support the denial of his application, we deny the petition.

### I. Facts and Procedural History

Gjocaj, who was born on May 18, 1982, is a native and citizen of Albania. Gjocaj arrived in the United States on October 10, 2002, by crossing the border from Mexico into Texas. Shortly thereafter, he was issued a Notice to Appear, which charged him with being subject to removal as an alien present in the United States without being admitted

or paroled. On January 14, 2003, with the assistance of a non-attorney, Gjocaj filed an application for asylum, withholding of removal, and relief under the CAT. He subsequently filed a supplementary application with the assistance of counsel.

At his merits hearing before the IJ, Gjocaj testified that he left Albania because he was subjected to persecution on account of his activities in support of the Democratic Party ("DP"). According to Gjocaj, the persecution began when he became an active member of the DP in 2000. The following summary of the events leading up to Gjocaj's arrival in the United States is based on Gjocaj's testimony before the IJ.

Gjocaj described numerous instances of mistreatment that he suffered on account of his involvement with the DP. On September 22, 2000, he and his brother were distributing pamphlets and posting leaflets prior to countrywide local elections scheduled for October 1, 2000. Three uniformed policemen approached them, threatened to kill them, and beat Gjocaj causing him to faint. His brother took him home, where he remained for two days under the care of a doctor and his mother. Following this incident, Gjocaj hid for about two weeks after learning that he was under police surveillance and sought for arrest.

On November 28, 2000, Gjocaj and his father went to a demonstration protesting the manipulation of the results of the October 1st local elections. The police suppressed the demonstration using weapons and hand grenades, killing a number of protestors and wounding Gjocaj. Gjocaj suffered an injury to one of his arms, for which he received medical treatment. He testified that he was under the care of a doctor for seven

3

consecutive days; one day at a clinic and the rest at home. Approximately one month later, the police came looking for Gjocaj at his home, but they left after his father told them that Gjocaj was not there.

During the parliamentary elections of June 20, 2001, Gjocaj served as an election observer for the Youth Forum of the Democratic Party. On election day, a representative of the Socialist Party approached Gjocaj and warned Gjocaj that he had enough power to squash him if he did not cease his political activities. About two weeks later, on July 7, 2001, Gjocaj's house was shot at by individuals riding in a vehicle similar to those used by the Albanian Secret Police.

Gjocaj further testified that over a year later, on September 15, 2002, three uniformed policemen searched his home, arrested him at gunpoint, threatened him with death, and detained him for 32 hours (and his brother Ferid for two days). At the police station, Gjocaj was interrogated about his political activities in connection with the DP, and he was beaten, kicked, and hung upside down with his feet tied to the ceiling. Gjocaj was subsequently released without being charged with a crime. According to Gjocaj, he believed he was arrested because he, his brother, and some friends organized a peaceful demonstration three days earlier, on September 12, 2002, to commemorate the third anniversary of the death of a DP leader.

After the September 15th incident, Gjocaj decided to leave Albania and come to the United States. He ultimately left Albania for the United States on October 1, 2002, and he arrived in Texas through Mexico on October 10, 2002.

4

At the conclusion of his merits hearing, the IJ issued a decision finding that Gjocaj was removable as charged, and denying his application for asylum, withholding of removal, and relief under the CAT. The IJ first reviewed, statement by statement, a number of discrepancies between Gjocaj's testimony at the merits hearing, his supplemental asylum application (which was prepared by the attorney who represented him at the hearing), and his initial asylum application (which was prepared by a non-attorney). The IJ noted that when Gjocaj was questioned about the discrepancies, Gjocaj claimed that they arose because his statements had been mistranslated by a secretary in his attorney's office and/or his attorney had failed to include his full story in the supplemental asylum application. The IJ did not find Gjocaj's explanations persuasive. Instead, the IJ ruled

> that the credibility issues [noted earlier in the IJ's opinion], both in terms of the internal inconsistencies as well as omissions, especially in the context of an application prepared on a supplementary basis by his current counsel of record, cannot be reconciled and cumulatively, in the Court's view, support an adverse credibility finding . . . . The Court cannot find the explanations that [Gjocaj] gave plausible. The Court cannot assume that an officer of the Court has been negligent to the extent [Gjocaj] has implicitly alleged, both mistranslating [Gjocaj's] alleged story as well as omitting key items that motivated the targeting of [Gjocaj] and his consequential departure from Albania.

(JA 64-65.) The IJ further found that, independent of the adverse credibility determination, the record did not contain evidence sufficient to conclude that Gjocaj was eligible for relief under the CAT. Gjocaj appealed the IJ's decision, which the BIA affirmed without opinion on November 10, 2004.

5

## II. Discussion

Gjocaj asserts two arguments in support of his petition for review. First, Gjocaj argues that the IJ's denial of his application for asylum is not supported by substantial evidence because, contrary to the IJ's conclusion, his claims were supported by credible testimony. Second, Gjocaj argues that the IJ's denial of his application for withholding of removal and relief under the CAT is not supported by substantial evidence because it is more likely than not that he will be persecuted if returned to Albania.

This Court reviews both the IJ's adverse credibility determination and the denial of asylum, withholding of removal, and CAT relief under the "substantial evidence" standard.[1] See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). Under this standard, the IJ's ruling must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." Id. at 243 (quoting Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002)).

An IJ's adverse credibility determination must be based on evidence in the record, rather than on speculation. Gao, 299 F.3d at 272. Minor inconsistencies unrelated to an asylum applicant's fear for his or her safety are not a sufficient basis for an adverse credibility finding. Id. Instead, "[t]he discrepancies must involve the 'heart of the asylum claim.'" Id. (quoting Ceballos-Castillo v. INS, 904 F.2d 519, 520 (9th Cir.1990)). On review by this Court, the IJ's credibility findings are subject to the substantial evidence

_____

[1]Because the BIA affirmed the IJ's decision without opinion, this Court reviews the IJ's decision. See Partyka v. Attorney General, 417 F.3d 408, 411 (3d Cir. 2005).

standard.  See Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc).

Here, the IJ concluded that Gjocaj lacked credibility based on discrepancies between Gjocaj's testimony and statements in his supplemental asylum application.[2]  The IJ placed particular emphasis on omissions related to the incident on September 15, 2002, when, three days after Gjocaj and his brother helped to organize an event commemorating the death of a DP leader, the police arrested them at home and took them into custody.  Specifically, the IJ pointed out that Gjocaj's testimony about his treatment at the police station was significantly more detailed than the description in the supplemental application, and that the supplemental application failed to mention the commemorative event even though Gjocaj testified that the event prompted the September 15th incident.  The IJ further noted that Gjocaj's testimony included other information that was omitted from[3] or inconsistent with[4] his supplemental application.  Although the IJ conceded that

_____

[2]As noted above, Gjocaj filed two applications for asylum:  the first application was prepared by a non-attorney, while the second, or supplemental, application was prepared by the attorney who represented him at his hearing.  The IJ's ruling focused on discrepancies between Gjocaj's testimony and the statements in his "supplemental application."

[3]For example, Gjocaj's supplemental application does not mention the incident when individuals in an unmarked car shot at his house shortly after he was threatened while serving as an election observer for the DP, or the fact that he learned from a family friend that he was under video surveillance and on a police list.

[4]For example, Gjocaj testified that he was beaten by police on September 22, 2000 between 2:00 and 3:00 p.m., whereas his supplemental application states that the beating took place at night; Gjocaj testified that his home was searched only on September 15, 2002, whereas his supplemental application states that it was searched "several times"; Gjocaj testified erroneously that the November 28, 2000 protests of the local elections occurred on October 28th until his attorney pointed out the mistake; and Gjocaj testified

7

some of the omissions and inconsistencies were relatively minor, he concluded that, taken together, they supported an adverse credibility determination.

Gjocaj acknowledges the numerous discrepancies on which the IJ based the adverse credibility determination. However, he argues that the IJ's adverse credibility determination is not supported by substantial evidence because Gjocaj's testimony contains explanations for each discrepancy. For example, with respect to the omissions identified by the IJ, Gjocaj testified that he believed that his supplemental application included the omitted details because he had in fact explained them to his attorney prior to submission of the supplemental application.

To be sure, the fact that an asylum application is less detailed than an applicant's testimony does not necessarily constitute "a meaningful omission which should lead the court to make an adverse credibility finding." Cao v. Attorney General, 407 F.3d 146, 160 (3d Cir. 2005) (citing Lopez-Reyes v. INS, 79 F.3d 908, 911 (9th Cir. 1996) ("An applicant's testimony is not per se lacking in credibility simply because it includes details that are not set forth in the asylum application.")). Nonetheless, this Court is bound to uphold an adverse credibility determination if it is supported by substantial evidence, and may do so even after rejecting some of its bases. See He Chun Chen v. Ashcroft, 376 F.3d 215, 224-25 (3d Cir. 2004) (finding substantial evidence for an adverse credibility

_____

that he received medical treatment for two or three weeks following the November 28th incident, whereas his supplemental application states that he received treatment for only seven days.

8

determination despite "extreme discomfiture" with some of the IJ's specific findings).

Here, the most important facts omitted from Gjocaj's supplemental application are the details of the September 15, 2002 detention and beating, and reference to the protest three days earlier that apparently gave rise to the detention and beating. In particular, the relevant portion of Gjocaj's supplemental application states only that he was beaten and threatened at the police station, whereas Gjocaj testified that the police hung him upside down from the ceiling, poured water on him while he was on the ground, and beat him with a rope. Gjocaj stated that the September 15th incident motivated him to leave Albania, which makes these omitted facts integral to his claim of persecution and related to the "heart of the asylum claim." Furthermore, as the IJ noted, Gjocaj's family remains in Albania and there is no evidence in the record that his father or brother Ferid have been targeted for their political activities since Gjocaj left the country.[5] For these reasons, we cannot conclude that "any reasonable adjudicator would be compelled to conclude that the IJ's adverse credibility determination was erroneous."

Finally, Gjocaj argues that the IJ erred in rejecting his withholding of removal and CAT claims, arguing that he will be tortured if he is returned to Albania. However, based on the IJ's adverse credibility determination and the documentary evidence in the

_____

[5]Although we do not take judicial notice of country conditions not reflected in the administrative record, see Berishaj v. Ashcroft, 378 F.3d 314, 330 (3d Cir. 2004), we nonetheless note that "[t]he Democratic Party and its allies returned to power with a decisive victory" in the July 5, 2005 general elections. See U.S. Dep't of State, Bureau of European and Eurasian Affairs, Background Note: Albania (Sept. 2005), http://www.state.gov/r/pa/ei/bgn/3235.htm.

9

administrative record, substantial evidence exists to support the denial of Gjocaj's claims.

## III. Conclusion

For the foregoing reasons, we will deny Gjocaj's petition for review.

———