

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-6-2007

# Singh v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3268

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Singh v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1001.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1001

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 06-3268
_____

KULWANT SINGH,
                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Review of a Decision of the
Board of Immigration Appeals
(Agency No. A97 445 237)
Immigration Judge:  Mirlande Tadal
_____

Submitted Under Third Circuit LAR 34.1(a)
May 15, 2007

Before:  RENDELL, HARDIMAN AND COWEN. CIRCUIT JUDGES

(Filed: June 6, 2007)
_____

_____

OPINION
_____

PER CURIAM

        Kulwant Singh, a native and citizen of India, petitions for review of an order of the

Board of Immigration Appeals ("BIA").  For the following reasons, we will grant the

petition for review and remand for further proceedings consistent with this opinion.

Singh entered the United States in July 2002. He was charged with being removable based on his entry into this country without being admitted or paroled in October 2004. See Immigration and Nationality Act ("INA") § 212(a)(6)(A)(I) [8 U.S.C. § 1182(a)(6)(A)(I). In February 2005, Singh applied for asylum, withholding of removal, and for relief under the Convention Against Torture ("CAT").

At a hearing before an Immigration Judge ("IJ"), Singh testified that he and his family lived and worked on a farm in the Punjab region of India. On August 10, 2000, three men who Singh believed were "Pakistani terrorists" arrived at the farm and demanded at gunpoint that they be provided with food. Singh's family complied and the men fled when the police appeared. After chasing the men, the police returned to Singh's farm and accused the family of collaborating with the terrorists. Singh and his brother were arrested and detained for six days, during which Singh was stripped of his clothes, interrogated and beaten. Upon his release, which was obtained when village elders paid a bribe to the police, Singh was treated by a doctor for his injuries.

Singh and his brother were arrested again on December 25, 2001, following the theft of the brother's scooter. The thief was caught and found to be in possession of weapons. The police used the scooter's registration to locate Singh and his brother, and accused them of providing assistance to the thief, who the police believed was a terrorist. During his detention, the police beat the soles of Singh's feet, hung him upside-down, and applied electric shocks to his temples and genitals. After being held for five days, village elders

2

were again able to secure Singh's release with the payment of a bribe.[1]  Singh's family immediately took him to a hospital where he was admitted for two weeks.  To avoid the police, Singh moved to Delhi.  He remained there until July 2002, when he left for the United States.  According to Singh, there is an outstanding warrant for his arrest and the police in Punjab continue to inquire as to his whereabouts.

## II.

The IJ concluded that Singh's application for asylum was untimely under INA § 208(a)(2)(B) [8 U.S.C. § 1158(a)(2)(B)], which requires filing within one year of arrival, and that there were no extraordinary circumstances justifying the filing delay.  The IJ also found that Singh's account was inconsistent, implausible, and not adequately supplemented with documentary evidence.  Accordingly, the IJ denied withholding of removal and CAT protection.

The BIA adopted and affirmed the IJ's decision, and dismissed the appeal.  The Board agreed that Singh's asylum application was untimely, and that he had not justified the delay.  The BIA also found that Singh failed to demonstrate his eligibility for other relief, concluding "that the adverse credibility finding is supported by the record."  In particular, the BIA stated that there were "inconsistencies regarding dates and events that are central to the persecution claim."  Singh has filed a timely pro se petition for review.

---

[1] Although the police claimed that they released Singh's brother at the same time, Singh claims that no one in his family has heard from his brother since the December 2001 arrest.

3

III.

We exercise jurisdiction to review the BIA's final order of removal under INA § 242(a) [8 U.S.C. § 1252(a)].[2] Because the BIA adopted the findings of the IJ and also commented on the sufficiency of the IJ's determinations, this Court reviews the decisions of both the BIA and the IJ. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). Our review of these decisions is for substantial evidence, considering whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Balasubramanrim v. INS, 143 F.3d 157, 167 (3d Cir. 1998). The decisions must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (quoting Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001). Adverse credibility determinations must be based on "specific, cogent reasons," not on "speculation, conjecture, . . . and otherwise unsupported personal opinion," Dia v. Ashcroft, 353 F.3d 228, 249-50 (3d Cir. 2003) (en banc), or minor inconsistences that do not go to the "heart of the asylum claim." Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (quoting Ceballos-Castillo v. INS, 904 F.2d 519, 520 (9th Cir. 1990)).

---

[2] To the extent that Singh challenges factual or discretionary determinations related to the timeliness of his asylum application, we lack jurisdiction. See INA § 208(a)(3) [8 U.S.C. § 1158(a)(3)]. Although we retain jurisdiction to review constitutional claims and questions of law, Sukwanputra v. Gonzales, 434 F.3d 627, 634 (3d Cir. 2006), Singh does not raise any such questions. Furthermore, Singh has waived his claim under the CAT by failing to raise the issue in his brief. See Chen v. Ashcroft, 376 F.3d 215, 221 (3d Cir. 2004).

IV.

The IJ found that Singh's credibility was "materially diminished" by one document in the record: an application for a replacement passport that Singh had submitted to the Indian Consulate in March 2004. The passport application twice asked for the date the applicant left India. Singh provided separate answers for each question, indicating that he departed in June 2000 and June 2001. Because these departure dates indicated that Singh was not in India on the dates of the alleged persecution (i.e., August 2000 and December 2001), the IJ discredited Singh's testimony. The IJ also found it implausible that Singh would "voluntarily present[] himself to the government in order to seek a passport" when the "Consul would have information that the respondent was arrested by its government in 2000 and 2001 and that there was an outstanding warrant for his arrest." Likewise, the IJ could "find[] no reason" why Singh would purposefully misrepresent his departure date given that "his government . . . could easily verify the date . . . the respondent left his country."

We conclude that the justifications for denying Singh's applications for relief are not supported by substantial evidence. Importantly, there is no indication that the IJ and BIA considered the entire record, including evidence directly supporting Singh's allegation that he was arrested and beaten in August 2000 and December 2001. For instance, Singh produced a letter from a doctor, written on hospital letterhead, stating that Singh had been treated as an "indoor patient" from August 15, 2000 to August 29, 2000, and again from December 29, 2001 to January 12, 2002. The record also contains an affidavit from a

5

village elder who helped obtain Singh's release from detention which states that Singh was arrested in August 2000. See Gao, 299 F.3d at 272-73. Where, as here, "the administrative record fails to reveal that . . . [material] evidence has been fairly considered, the proper course is to remand the case to the [agency] so that [it] may evaluate such evidence and consider its effect on the application as a whole." Sotto v. INS, 748 F.2d 832, 837 (3d Cir.1984).

Moreover, other than the date discrepancies created by the passport application, Singh consistently maintained throughout his immigration proceedings that he left India in July 2002. Singh testified that he purposefully provided false departure dates on the passport application because he had been told that doing so would speed up the application process. Given this plausible explanation, the IJ's own determination that Singh had no other reason to lie, and an otherwise consistent record, we believe that the departure dates listed on Singh's passport application cannot alone serve as the basis for an adverse credibility finding. See Gui Cun Liu v. Ashcroft, 372 F.3d 529, 534 (3d Cir. 2004) (remanding because "[a]bsent the one glaring inconsistency," evidence was insufficient to support adverse credibility determination); see also Gao, 299 F.3d at 272.

The adverse credibility determination was also grounded on the IJ's conclusion that it was "irrational" for Singh to apply for a replacement passport using false departure dates. According to the IJ, the Indian Consulate would be aware of the arrest warrant issued by police in Punjab and the Indian government could "easily verify" the date Singh left the country. These determinations assume that the Consulate and law enforcement agencies in

6

India share arrest warrant information, and that immigration authorities in India keep track of an individual's departure dates. Any conclusion that India's government apparatus is that well-functioning rests on sheer speculation, and is not a proper basis for an adverse credibility determination. See Jishiashvili v. Attorney General, 402 F.3d 386, 393-94 (3d Cir. 2005).

The IJ also faulted Singh for failing to provide a copy of the arrest warrant. We have held that even credible asylum applicants may be required, under certain circumstances, to provide corroborating evidence in order to meet their burden of proof. See Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001). In deciding whether corroborating evidence is necessary, the IJ should (1) identify the facts for which it is reasonable to expect corroboration, (2) decide whether the petitioner has provided information corroborating the relevant facts, and, if not, (3) analyze whether the petitioner has adequately explained his failure to do so. See Mulanga v. Ashcroft, 349 F.3d 123, 133-34 (3d Cir. 2003). In this case, the IJ impermissibly required Singh to present a document that presumably is in the possession of his persecutors, see In re S-M-J-, 21 I. & N. Dec. 722, 725-26 (BIA 1997), and omitted any discussion as to whether he adequately explained his failure to produce the arrest warrant. See Dia, 353 F.3d at 253.

V.

In sum, when making the adverse credibility determination, the IJ and BIA failed to consider the record as a whole, relied on relatively minor date discrepancies in an otherwise consistent account, and resorted to speculation concerning the capabilities of the Indian

7

government. As a result, we conclude that substantial evidence did not support the adverse credibility determination. Accordingly, we will grant Singh's petition and remand to the Board (which then may remand to the IJ) to determine, without regard to the prior adverse credibility finding, whether the administrative record, as a whole, provides substantial evidence in support of Singh's applications for relief. We express no opinion as to the ultimate outcome.