**Mamy Biro CAMARA, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 06–4000.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) April 16, 2008.

Filed April 24, 2008.

Carl A. Solano, Schnader Harrison Segal & Lewis, Philadelphia, PA, for Petitioner.

Richard M. Evans, Joan E. Smiley, Andrew Oliveira, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SCIRICA, Chief Judge, CHAGARES and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

Mamy Biro Camara, a native and citizen of Guinea, petitions for review of an order of the Board of Immigration Appeals ("BIA"). For the following reasons, we will grant the petition for review and remand for further proceedings consistent with this opinion.

In July 2003, Camara was admitted to the United States with authorization to remain for six months. He overstayed his admission period and, in March 2004, was charged with removability pursuant to Immigration and Nationality Act ("INA") § 237(a)(1)(B) [8 U.S.C. § 1227(a)(1)(B) ]. Camara conceded his removability but applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). He claimed that he was persecuted because he belongs to the Mandingo ethnic group and because of his affiliation with the political opposition party Rally of the People of Guinea ("RPG"). In particular, Camara, a doctor, asserted that he was falsely accused of refusing to treat supporters of the Guinean government. In 2000, he was arrested by the military and taken to prison, where he was denied food, burned with cigarettes, and deprived of medical treatment for a broken arm suffered during the arrest. After nine days in custody, Camara was transferred to a hospital. Although he was supposed to return to prison, Camara escaped with the help of friends. After spending more than three years in Dakar, Senegal, Camara traveled to the United States.

The Immigration Judge ("IJ") denied relief. Citing inconsistencies, improbabilities, and lack of corroboration in the record, the IJ found that Camara was not credible. In August 2006, the Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's decision—with the exception of certain portions of the IJ's credibility finding—and dismissed the appeal. Camara petitioned for review of the BIA's decision.

We exercise jurisdiction to review the BIA's final order of removal under INA § 242(a) [8 U.S.C. § 1252(a) ].[1] Because

---

1. Because Camara's claim for asylum was filed prior to the effective date of the REAL ID Act of 2005's new credibility determination standard, see INA § 208(b)(1)(B)(iii) [8

the BIA adopted the findings of the IJ and also commented on the sufficiency of the IJ's determinations, this Court reviews the decisions of both the BIA and the IJ. *See Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir.2004). Our review of these decisions is for substantial evidence, considering whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir.1998). The decisions must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." *Zubeda v. Ashcroft*, 333 F.3d 463, 471 (3d Cir.2003) (quoting *Abdille v. Ashcroft*, 242 F.3d 477, 484 (3d Cir.2001)). Adverse credibility determinations must be based on "specific, cogent reasons," not on "speculation, conjecture, . . . and otherwise unsupported personal opinion," *Dia v. Ashcroft*, 353 F.3d 228, 249–50 (3d Cir.2003) (en banc), or minor inconsistences that do not go to the "heart of the asylum claim." *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir.2002) (quoting *Ceballos–Castillo v. INS*, 904 F.2d 519, 520 (9th Cir.1990)).

▇▇ The first inconsistency identified by the BIA involved Camara's explanation of why he was arrested. In his asylum application, Camara stated that he was charged with using "state medical facilities to treat opposition partisans." Camara testified that he was arrested as a result of his refusal to treat government sympathizers. When asked about this discrepancy, Ca-

mara claimed that it must have resulted from a translation error in his written application because "I have always sa[id] that I was accused for not providing medical care." The IJ rejected this explanation because the application was filed with the assistance of counsel, because it was submitted "plenty of time after" Camara arrived in the United States, and because Camara had the opportunity to read it over and make sure that it was accurate. But, while Camara's attorney did submit a supplemental asylum application, the application itself was prepared by a third party who translated Camara's statements into English.[2] Because Camara testified that "I don't understand English in order to be able to read again my application and make any correction," the length of time he had to prepare and review his application becomes less relevant. *Cf. Gui Cun Liu v. Ashcroft*, 372 F.3d 529, 534 (3d Cir.2004) (noting presumption that applicant was aware of signed application's contents can be rebutted). Under these circumstances, it was improper to base the adverse credibility finding on the discrepancy between Camara's asylum application and his testimony concerning the reason for his arrest.[3] *See Alvarez–Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir.2003) ("Inconsistencies due to an unscrupulous preparer, without other evidence of dishonesty . . . do not provide a specific and cogent basis for an adverse credibility finding.") (internal citation omitted).

U.S.C. § 1158(b)(1)(B)(iii) ], we review the credibility determination under our case law which predated the REAL ID Act. *See Chukwu v. Attorney General*, 484 F.3d 185, 189 (3d Cir.2007).

**2.** The description of Camara's experiences that appears in his supplemental asylum application is virtually identical to that provided in his initial application. Both applications were prepared by the same person. If, as this suggests, the supplemental application was

not started from scratch, a translation error in the first application likely would have been transferred to the second.

**3.** As further support for his contention that the preparer mistranslated some of his statements, Camara notes that the asylum applications referred to a "fractured hand," even though a physical examination of his body clearly indicated to the IJ that it was Camara's arm that had been injured.

■ The BIA and IJ also questioned the authenticity of a letter Camara submitted to establish his membership in the RPG. Camara testified that he joined the RPG on May 20, 1998. The letter, which appears to be dated May 20, 1998, stated that Camara "is an official of our party since 1998 . . . [and] is also Secretary General of the Youth Win[g] of the . . . District of Dixinn." The IJ questioned whether the letter was "genuine at all" because it suggested that Camara "instantly became" a Secretary General on the date that he joined the RPG. Camara reasonably explained, however, that he was active in the RPG before May 20, 1998, and was simply "recognized officially [as] a member of the party" on that date. The IJ also found a "whole other problem" in that the letter was signed by a "member" rather than an "official" of the RPG. Although the BIA did not find that there was enough evidence to support the IJ's suggestion that the letter was fraudulent, the Board found it "reasonable to question the document's authenticity." This conclusion amounts to impermissible speculation, as nothing in the record indicates that Camara could not have become a General Secretary on the day he joined the RPG or that an RPG attestation letter is valid only if signed by a party official. See Jishiashvili v. Attorney General, 402 F.3d 386, 393 (3d Cir.2005).

The BIA did not comment on several additional adverse credibility determinations made by the IJ. However, because the BIA "adopt[ed] and affirm[ed]" the IJ's decision, we must review, with the exception of the credibility determinations which the Board specifically declined to adopt, the IJ's independent conclusions as well. See Xue Hong Yang v. U.S. Dep't of Justice, 426 F.3d 520, 522 (2d Cir.2005) (holding that when BIA affirms IJ's decision in all respects but one, review is of the IJ's decision as modified by the BIA decision, "minus the single argument for denying relief that was rejected by the BIA"). Here, the portions of the IJ's adverse credibility determination that were adopted without comment by the BIA are not supported by substantial evidence. Therefore, the BIA's decision to defer to them was error. See Abdulai v. Ashcroft, 239 F.3d 542, 549 n. 2 (3d Cir.2001).

■ The IJ's adverse credibility determination was based in part on Camara's failure to provide sufficient information about "what he did as a supposed youth wing leader." Significantly, though, Camara did not claim that he was persecuted on account of activities he undertook in that position. Rather, Camara explained in detail that he was arrested because, in his capacity as a doctor, he allegedly refused to provide medical treatment to Guinean government supporters. See Mulanga v. Ashcroft, 349 F.3d 123, 138 (3d Cir. 2003) (cautioning that "[a]n applicant for asylum must provide corroborating evidence only when it would be reasonably expected."). The IJ also found Camara's credibility was undermined by a letter from his wife which did not describe why he was targeted by the Guinean government. That letter, however, explains that Camara "who was a licensed surgeon . . . was accused by armed men loyal to President Lassana Conte for being a strong supporter of [the RPG]." On this record, the IJ erred in relying on a lack of evidence concerning Camara's activities in the RPG organization. See Chen v. Gonzales, 434 F.3d 212, 220 (3d Cir.2005) (reviewing for substantial evidence IJ's finding that it was reasonable to expect corroboration).

The IJ also cited alleged inconsistencies concerning whether Camara started working at a hospital in September 1996 or November 1996, and whether he began work there as a surgeon. These factors,

182

however, do not go to the heart of Camara's claim that he was persecuted in 2000 for allegedly not treating government supporters. *See Gao v. Ashcroft,* 299 F.3d at 272. Notably, the IJ did not doubt that Camara had his medical license during the period when the alleged persecution occurred.[4] While the IJ doubted Camara's credibility on the basis that his three-year stay in Senegal provided him "years to plan his trip to the United States of America and what he would do about it," nothing in the record supports the idea that Camara's "opportunity to be thoughtful about his case" led to a fabrication of his story.

In sum, we conclude that the adverse credibility determination was not supported by substantial evidence. The BIA and IJ unreasonably rejected Camara's explanations for discrepancies, improperly speculated about evidence demonstrating Camara's membership in the RPG, and impermissibly required corroboration for assertions not relevant to Camara's claims. Accordingly, we will grant Camara's petition and remand to the Board (which then may remand to the IJ) to determine, without regard to the prior adverse credibility finding, whether the administrative record, as a whole, provides substantial evidence in support of Camara's applications for relief. We express no opinion as to the ultimate outcome.

---

4. In any event, the alleged inconsistencies were reasonably explained by Camara's testimony that although he was "under the surgery department" at the hospital, he first had to work in the pharmacy "so that I can know the medication that I prescribe to the patients." Because that position was considered to be in the commercial sector and required that Camara travel to deliver drugs, he was issued a passport identifying him as a "businessman."