**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2165
_____

LIU GUI ZHENG,
                                        Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A096-336-167)
Immigration Judge: Honorable Mirlande Tidal
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 10, 2011
Before:  SLOVITER, CHAGARES and WEIS, Circuit Judges

(Opinion filed: March 15, 2011)
_____

OPINION
_____

PER CURIAM.

Liu Gui Zheng petitions for review of a final order of removal entered by

the Board of Immigration Appeals ("BIA"), which dismissed his appeal of an

immigration judge's ("IJ") denial of his application for asylum, withholding of removal,

and relief under the Convention Against Torture ("CAT"). For the following reasons, we will deny the petition for review.

Zheng is a native and citizen of the People's Republic of China. He arrived in the United States without valid entry documents in November 2004. On the day of his arrival, he was issued a notice to appear, charging him as being removable pursuant to 8 U.S.C. § 1182(a)(6)(i) (entering the country without being admitted or paroled). He conceded removability, and later filed an application for asylum, withholding of removal, and relief under the CAT.

At his hearing before the IJ, Zheng testified that the Chinese government had persecuted him because it thought that he was promoting Falun Gong. Zheng says that although he did not practice Falun Gong in China, sometime in 1999 he befriended a practitioner, who later gave Zheng books and flyers about Falun Gong. In the years that followed, Zheng read the books in his free time. According to his father, Zheng privately discussed Falun Gong with his family and expressed displeasure with the way that the Chinese government treated its practitioners.

In March 2004, Zheng overheard a group of coworkers speaking negatively about Falun Gong. Convinced that they had been brainwashed by the Chinese government, Zheng undertook to change their minds, first through debate, and then by giving them some of the flyers that he had at his home. Later that month, two village officials met him at his work one morning and escorted him to the village office, where they interrogated him and tried to force him to confess to spreading Falun Gong. When

2

Zheng refused, the officials beat him, burned his hands, and held him without food until he escaped later that night.

His escape from the office occurred when one of the guards told him to use the bathroom. Next to the bathroom was a door that led outside. He exited the building and walked to a nearby riverbank. There, he met his parents, who were waiting for him with a boat. He took the boat to a neighboring village, where he stayed in an aunt's home. Later, Zheng's parents told him that they had secured his release by bribing one of the guards at the village office. Zheng stayed with his aunt for a few weeks, and then he left China for the United States. He said that he has since spoken to his parents on a number of occasions. They said that in the wake of his departure, village officials repeatedly came to his home to inquire about his whereabouts. The village officials began to harass his parents, and eventually, they too moved in with the aunt. Zheng also testified that he has practiced Falun Gong since arriving in the United States. To support this claim, he offered the testimony of a fellow practitioner, as well as pictures of him practicing in front of the Chinese Consulate in New York.

The IJ made an adverse credibility determination, finding Zheng's testimony to be "overall unbelievable and implausible." The IJ pointed to many aspects of Zheng's testimony and doubted whether the conversation with the coworkers or the arrest had occurred at all. Specifically, the IJ noted Zheng's inconsistent testimony with regard to the date of his conversation with his coworkers and the result. The IJ found that, by Zheng's description of the literature that he gave to his coworkers, he could not

3

have expected to persuade them. The IJ also doubted Zheng's account of his escape from the village office. First, since the Chinese government does in fact persecute followers of Falun Gong, the IJ doubted whether Zheng's family would have been able to pay a bribe to secure his release. Second, the IJ doubted that, with no contact with his family since his arrest, Zheng would have known where to go to meet them after he escaped from the office Finally, the IJ found that Zheng submitted the pictures of him practicing Falun Gong in front of the Chinese Consulate as an attempt to "manipulate the Court." In addition, the IJ was suspicious of Zheng's seeming lack of knowledge of Falun Gong.

The BIA dismissed Zheng's appeal. It found that the IJ's adverse credibility determination was not clearly erroneous, focusing on Zheng's inconsistent testimony with regard to his conversation with his coworkers, his limited knowledge of Falun Gong, and the implausibility of the account of his escape from the village officials. Zheng filed a petition for review.

We have jurisdiction to hear this appeal under 8 U.S.C. § 1252(a)(1). Because the BIA "invoke[d] specific aspects of the IJ's analysis and fact-finding in support of [its] conclusions," we review both the IJ and the BIA's decisions. See Voci v. Gonzales, 409 F.3d 607, 613 (3d Cir. 2005). In reviewing an order of removal, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be able to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Adverse credibility determinations must be based on "specific, cogent reasons," not on "speculation, conjecture, [. . .] and other wise unsupported personal opinion," Dia v. Ashcroft, 353

4

F.3d 228, 249-50 (3d Cir. 2003) (en banc), or minor inconsistencies that do not go to the "heart of the asylum claim," Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (quoting Ceballos-Castillo v. INS, 904 F.2d 520 (9th Cir. 1990).[1]

To establish eligibility for asylum, an applicant must show either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42). An applicant who establishes past persecution on account of one of the five enumerated grounds "triggers a rebuttable presumption of a well-founded fear of future persecution, as long as the fear is related to the past persecution." Lukwago v. Ashcroft, 329 F.3d 157, 174 (3d Cir. 2003); 8 C.F.R. § 208.13(b)(1). An applicant seeking withholding of removal must show that it is "more likely than not" that he or she will be subject to persecution on account of one of the five enumerated grounds if removed to his or her home country. Zubeda v. Ashcroft, 333 F.3d 463, 470 (3d Cir. 2003). An applicant seeking relief under the CAT must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Sevoian v. Ashcroft, 290 F.3d 166, 175 (2002) (quoting 8 C.F.R. § 208.16(c)(2)).

Although we have reservations about aspects of the IJ's reasoning, we conclude that her adverse credibility determination is supported by substantial evidence in the record, as Zheng's account of his escape of the village office could have led a

---

[1] Because Zheng applied for asylum before May 11, 2005, we apply the pre-REAL ID Act standard for credibility determinations. Chukwu v. Attorney Gen. of the United States, 484 F.3d 185, 189 (3d Cir. 2007).

reasonable fact-finder to conclude that Zheng lacked credibility. He claimed that he had no contact with his parents on the day that he was detained, and thus did not know about the bribe that they had paid until days later. Upon leaving the prison, he said that he walked for about five minutes to the riverbank, where his parents were waiting with the boat that took him to his aunt's house. However, he does not explain how he knew that his family was waiting on the riverbank, or where along the riverbank they were located. The account of his escape from the office to his aunt's houses goes to the heart of his claim, as it is related to the only instance of persecution that Zheng offers to establish his claim.

We conclude that the BIA did not err in upholding the IJ's denial of Zheng's asylum claim. Although Zheng's application sought withholding of removal and CAT relief, his brief did not specifically address those arguments. Thus, he has waived his right to challenge the denial of those claims. See Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court.") (internal quotation marks and citation omitted). Accordingly, we will deny the petition for review.

6